BRIAN M. BOYNTON, Acting Assistant Attorney General, Civil Division
MICHAEL D. GRANSTON, Deputy Assistant Attorney General
GUSTAV W. EYLER, Director, Consumer Protection Branch
LISA K. HSIAO, Assistant Director
ALISHA M. CROVETTO, Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 5th Street, N.W.
Washington, DC 20530
Telephone: (202) 305-7196
alisha.m.crovetto@usdoj.gov

## THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>VIVINT SMART HOME, INC., a corporation,<br><br>    Defendant. | **Case No. 2:21-cv-00267-DAK**<br><br>**STIPULATED ORDER FOR PERMANENT INJUNCTION AND CIVIL PENALTY JUDGMENT**<br><br>**Judge Dale A. Kimball** |

Plaintiff, the United States of America, acting upon notification and authorization to the

Attorney General by the Federal Trade Commission ("FTC" or "Commission"), filed its

Complaint for Civil Penalties, Permanent Injunction and Other Equitable Relief ("Complaint"),

pursuant to Sections 13(b) and 16(a)(1) of the Federal Trade Commission Act ("FTC Act"), 15

U.S.C. §§ 53(b) and 56(a)(1), and Section 621(a) of the Fair Credit Reporting Act ("FCRA"), 15

U.S.C. § 1681s(a).  Defendant has waived service of the summons and the Complaint.  Plaintiff

and Defendant stipulate to the entry of this Stipulated Order for Permanent Injunction and Civil

Penalty Judgment ("Order") to resolve all matters in dispute in this action, and including potential action by the Plaintiff under § 19(a)(2) of the FTC Act, between them.

THEREFORE, IT IS ORDERED as follows:

## FINDINGS

1. This Court has jurisdiction over this matter.

2. The Complaint charges that Defendant participated in acts or practices in violation of Section 5 of the FTC Act, 15 U.S.C. § 45, the FCRA, 15 U.S.C. §§ 1681–1681x, and the Duties Regarding the Detection, Prevention, and Mitigation of Identity Theft ("Red Flags Rule"), 16 C.F.R. § 681, issued pursuant to Section 615(e) of the FCRA, 15 U.S.C. §1681m(e).

3. Defendant neither admits nor denies any of the allegations in the Complaint, except as specifically stated in this Order. Only for purposes of this action, Defendant admits the facts necessary to establish the Court's jurisdiction.

4. Defendant waives any claim that it may have under the Equal Access to Justice Act, 28 U.S.C. § 2412, concerning the prosecution of this action through the date of this Order, and agrees to bear its own costs and attorney fees.

5. Defendant and Plaintiff waive all rights to appeal or otherwise challenge or contest the validity of this Order.

## DEFINITIONS

For the purpose of this Order, the following definitions apply:

A. **"Consumer Report"** means any written, oral, or other communication of any information by a Consumer Reporting Agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living

which is used or expected to be used or collected in whole or in part for the purpose of serving as

a factor in establishing the consumer's eligibility for (1) credit or insurance to be used primarily

for personal, family, or household purposes; (2) employment purposes; or (3) any other purpose

authorized under FCRA Section 604, 15 U.S.C. § 1681b.

B.      **"Consumer Reporting Agency" or "CRA"** means any person which, for monetary fees,

dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of

assembling or evaluating consumer credit information or other information on consumers for the

purpose of furnishing Consumer Reports to third parties, and which uses any means or facility of

interstate commerce for the purpose of preparing or furnishing Consumer Reports.

C.      **"Defendant"** means Vivint Smart Home, Inc., a Delaware corporation, and its

successors and assigns.

D.      "**White Paging**" means qualifying potential customers for financing by utilizing the

credit history of an unrelated individual with a same or similar name, without that individual's

express written permission.

E.      "**Impermissible Co-Signing**" means adding individuals on an account without their

express written permission.

## ORDER

### I.      PROHIBITED BUSINESS ACTIVITIES

IT IS ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys,

and all other persons in active concert or participation with any of them, who receive actual

notice of this Order, whether acting directly or indirectly, in connection with promoting or

offering for sale any good or service, are permanently restrained and enjoined from failing to

establish and maintain a written Identity Theft Prevention Program ("ITP Program") that is designed to detect, prevent, and mitigate identity theft in connection with "Covered Accounts" in contravention of 16 C.F.R. § 681.1 ("Red Flags Rule"), including, but not limited to:

A.      Failing to conduct periodic assessments to determine whether the Defendant offers "Covered Accounts" within the meaning of the Red Flags Rule;

B.      Failing to administer the ITP Program in accordance with the Red Flags Rule, including obtaining approval for the ITP Program from the board of directors; and

C.      Failing to consider and include in the ITP Program all appropriate guidelines provided in Appendix A to the Red Flags Rule.

## II.      ADDITIONAL PROHIBITED BUSINESS ACTIVITIES

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees, and attorneys, and all other persons in active concert or participation with any of them, who receive actual notice of this Order, whether acting directly or indirectly, in connection with promoting or offering for sale any good or service, are permanently restrained and enjoined from:  (1) obtaining Consumer Reports from CRAs without a permissible purpose in contravention of Section 604(f) of the FCRA (15 U.S.C. § 1681b(f)); (2) selling, transferring, or placing for collection any debt on an account on which it knows or has reason to believe that White Paging or Impermissible Co-Signing has occurred; and (3) furnishing information about such debt to the CRAs.

## III.      CUSTOMER SERVICE TASK FORCE

IT IS FURTHER ORDERED that, within thirty (30) days of entry of this Order, Defendant must establish and maintain for five years, a Customer Service Task Force Program.

To satisfy this requirement, Defendant must, at a minimum:

A.      Designate a qualified employee to coordinate and be responsible for the Customer Service Task Force ("Coordinator"), who must be approved by and report directly to the board of directors or a committee thereof;

B.      For all debt sold to a debt buyer between January 1, 2016 and the entry of this Order, for all accounts whose file references more than one address or includes a co-signer, and prior to (1) attempting to collect any debt, (2) referring any account to a debt collector, (3) selling any debt to a debt buyer, or (4) reporting any debt to a consumer reporting agency (CRA), take reasonable steps to verify every name and address included with the account to confirm that the individual is properly included within the account, and require the Coordinator to certify, under penalty of perjury, that those reasonable steps were taken for each such account.

C.      On the homepage of Vivint.com, provide a prominent link to a dedicated Identity Theft Customer Service page, which will have contact information (including telephone, e-mail address, and physical mail address), for consumers to use to provide notice to Defendant of any identity theft associated with a Vivint account, including but not limited to identity theft associated with White Paging or Impermissible Co-Signing.

D.      Upon receipt of any notice described in Provision III.C above, through any means, immediately suspend any effort to collect any debt on that account, from any individual associated with the account, for no less than sixty (60) days.  For accounts that were already referred to or sold to a third-party, Defendant must immediately demand that such third-party suspend collection for at least sixty (60) days.  For any sale of debt to a third-party debt buyer or debt collector after the date of this order, Defendant must have contractual provisions requiring

5

such third party to comply with such suspension demand.

E.      For any account for which Defendant has received Provision III.C notice of identity theft take reasonable steps, within sixty (60) days, to investigate the claim, including, but not limited to: (1) interview the claimed identity theft victim; (2) interview the sales representative that initiated the account (if the representative is a current employee and otherwise make reasonable efforts to contact a former employee); and (3) review all documentation associated with the account.

F.      For debts determined to be illegitimate, either through a Provision III.B verification or Provision III.E investigation, (1) if any debts were reported to any CRA, immediately communicate to that CRA that the debt was illegitimate, and take reasonable steps to confirm that that the CRA removes any indication of the debt from the consumer, (2) for any debts that were sold or referred to any debt buyer or debt collector, promptly communicate to the debt buyer or debt collector that the debt was illegitimate, confirm that the debt buyer or debt collector will immediately stop all attempts to collect that debt, and repurchase the debt, (3) provide notice to the individuals associated with the debt of the availability of monetary relief pursuant to Provision X below, and (4) for any active accounts determined to have been authorized through White Paging or Impermissible Co-Signing, immediately remove any reference to those third parties on the accounts.

G.      For debts determined to be legitimate, prior to resuming collection after sixty (60) days or, in the case of accounts already referred to or sold to a third-party, prior to authorizing resumption of debt collection, require the Coordinator to certify, under penalty of perjury, that a Provision III.B verification or Provision III.E investigation has occurred and that the Coordinator

believes the individual named on the account is properly associated with the debt.

## IV.    EMPLOYEE MONITORING PROGRAM

IT IS FURTHER ORDERED that Defendant, beginning 30 days after entry of this Order, must not promote or offer for sale any good or service unless it establishes and implements, and thereafter maintains, an employee-monitoring program that prevents Defendant's employees or agents from obtaining Consumer Reports from CRAs without a permissible purpose ("Monitoring Program").  To satisfy this requirement, Defendant must, at a minimum:

A.    Document in writing the content, implementation, and maintenance of the Monitoring Program;

B.    Provide the written program and any evaluations thereof or updates thereto to Defendant's board of directors or governing body or, if no such board or equivalent governing body exists, to Defendant's senior officer responsible for the Monitoring Program at least once every 12 months;

C.    Designate a qualified employee or employees to coordinate and be responsible for the Monitoring Program, who will be approved by and report directly to the board of directors or a committee thereof;

D.    Assess and document, at least once every 12 months, internal and external risks that may facilitate employee access to Consumer Reports without a permissible purpose;

E.    Design, implement, maintain and document safeguards that control for the risks Defendant identifies related to employee access to Consumer Reports without a permissible purpose.  Such safeguards must include:

1.    Training of all of Defendant's sales employees and agents, at onboarding and at

7

least every 12 months thereafter, on the FCRA's legal requirements with respect to lawful access to Consumer Reports and activities that would violate those requirements;

2.      Technical safeguards such as modifying Defendant's sales technologies (including but not limited to Street Genie) designed to prevent sales employees and agents from improperly obtaining Consumer Reports from CRAs;

3.      An internal "ethics hotline" or similar mechanism to which sales employees and agents must report any sales integrity issues, including potential violations of the FCRA, along with a system for receiving, retaining, and addressing such employee allegations;

4.      Escalating sales employee and agent disciplinary measures for FCRA violations and failure to report FCRA violations, up to and including termination; and

5.      Review and modification, at least once every 12 months, of Defendant's sales goals, performance management and sales employee and agent compensation to ensure all are consistent with the objective of preventing FCRA violations; and

F.      Evaluate and adjust the Monitoring Program in light of any changes to Defendant's operations or business arrangements, or any other circumstance that Defendant knows or has reason to know may have an impact on the Monitoring Program's effectiveness.  At a minimum, Defendant must evaluate the Monitoring Program every 12 months and implement modifications based on the results.

## V.      THIRD PARTY ASSESSMENT

IT IS FURTHER ORDERED that, in connection with compliance with Provisions I-IV of this Order, Defendant must obtain initial and biennial assessments ("Assessments") as described below:

A.      The Assessments must be obtained from a qualified, objective, independent third-party professional ("Assessor"), who:  (1) has specialized experience in compliance with the FCRA; (2) conducts an independent review of Defendant's Identity Theft Prevention Program (if applicable), Customer Service Task Force and Employee Monitoring Program (collectively, the "Programs"); and (3) retains all documents relevant to each Assessment for five years after completion of such Assessment and provides such documents to the Commission within 10 days of receipt of a written request from a representative of the Commission.  No documents may be withheld by the Assessor from the Commission on the basis of a claim of confidentiality, proprietary or trade secrets, work product protection, attorney client privilege, statutory exemption, or any similar claim.

B.      For each Assessment, Defendant must provide the Associate Director for Enforcement for the Bureau of Consumer Protection at the Federal Trade Commission with the name and affiliation of the person selected to conduct the Assessment, which the Associate Director shall have the authority to approve in his or her sole discretion.

C.      The reporting period for the Assessments must cover:  (1) the first 180 days after the issuance date of the Order for the initial Assessment; and (2) each two-year period thereafter for 20 years after issuance of the Order for the biennial Assessments.

D.      Each Assessment must, for the entire Assessment period:  (1) determine whether Defendant has implemented and maintained the Programs; (2) assess the effectiveness of Defendant's implementation and maintenance of Provisions I-IV of this Order; (3) identify any gaps or weaknesses in, or instances of material noncompliance with, the Programs; and (4) identify specific evidence (including, but not limited to, documents reviewed, sampling and

testing performed, and interviews conducted) examined to make such determinations, assessments, and identifications, and explain why the evidence that the Assessor examined is sufficient to justify the Assessor's findings.  No finding of the Assessor shall rely solely on assertions or attestations by Defendant's management.  The Assessment must be signed by the Assessor and must state that the Assessor conducted an independent review, and did not rely solely on assertions or attestations by Defendant's management.  To the extent Defendant revises, updates, or adds one or more safeguards required under this Order in the middle of an Assessment period, the Assessment shall assess the effectiveness of the revised, updated, or added safeguard(s) for the time period in which it was in effect, and provide a separate statement detailing the basis for each revised, updated, or additional safeguard.

E.      Each Assessment must be completed within 60 days after the end of the reporting period to which the Assessment applies.  Unless otherwise directed by the Commission representative in writing, Defendant must submit the initial Assessment to the Commission within 10 days after the Assessment has been completed via email to Debrief@ftc.gov or by overnight courier (not the U.S. Postal Service) to Associate Director of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC 20580.  The subject line must begin:  "In re Vivint Smart Home, Inc., File No. 1923060."  All subsequent biennial Assessments must be retained by Defendant until the order is terminated and provided to the Associate Director of Enforcement within 10 days of request.

## VI.      COOPERATION WITH THIRD-PARTY ASSESSOR

IT IS FURTHER ORDERED that Defendant, whether acting directly or indirectly, in connection with any Assessment required by Provision V of this Order, must:

A.      Provide or otherwise make available to the Assessor all information and material in its

possession, custody, or control that is relevant to the Assessment for which there is no reasonable

claim of privilege; and

B.      Disclose all material facts to the Assessor, and not misrepresent in any manner, expressly

or by implication, any fact material to the Assessor's:  (1) determination whether Defendant has

implemented and maintained the Programs required by Provisions I-IV of this Order;

(2) assessment of the effectiveness of the implementation and maintenance of those Programs; or

(3) identification of any gaps or weaknesses in those Programs.

## VII.    OVERSIGHT REQUIREMENT

IT IS FURTHER ORDERED that Defendant will employ a Chief Compliance Officer,

who will have a reporting relationship to the Audit Committee of the Board in addition to any

reporting relationship the Chief Compliance Officer has to Defendant's management.  At least

every fiscal quarter, Defendant's Chief Compliance Officer will report to the Board or a

committee thereof on management's execution of its FCRA and identity theft risk management

compliance obligations and the effectiveness of Defendant's FCRA and identity theft risk

management compliance functions.

## VIII.    ANNUAL CERTIFICATION

IT IS FURTHER ORDERED that Defendant must:

A.      For a total of twenty years and commencing one year after the issuance date of this

Order, and each year thereafter, Defendant must provide the Commission with a certification

from Defendant's Chief Executive Officer, Todd Pedersen, or if Mr. Pedersen no longer serves

as Defendant's Chief Executive Officer, President, or such other officer (regardless of title) that

is designated in Defendant's Bylaws or by resolution of the Board of Directors as having the

duties of the principal executive officer of Defendant, then a senior corporate manager, or, if no

such senior corporate manager exists, a senior officer of the Defendant responsible for

Compliance with Provisions I-IV of this Order, that: (1) Defendant has established,

implemented, and maintained the requirements of this Order; and (2) Defendant is not aware of

any material noncompliance that has not been (a) corrected or (b) disclosed to the Commission.

The certification must be based on the personal knowledge of Mr. Pedersen, the senior corporate

manager, the senior officer, or subject-matter experts upon whom Mr. Pedersen, the senior

corporate manager, or the senior officer reasonably relies in making the certification.

B.      Unless otherwise directed by a Commission representative in writing, submit all annual

certifications to the Commission pursuant to this Order via email to DEBrief@ftc.gov or by

overnight courier (not the U.S. Postal Service) to Associate Director of Enforcement, Bureau of

Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington,

DC 20580.  The subject line must begin:  "In re Vivint Smart Home, Inc., FTC File No.

1923060."

### IX.      MONETARY JUDGMENT FOR CIVIL PENALTY

IT IS FURTHER ORDERED that:

A.      Judgment in the amount of fifteen million dollars ($15,000,000) is entered in favor of

Plaintiff against Defendant, as a civil penalty.

B.      Defendant is ordered to pay to Plaintiff, by making payment to the Treasurer of the

United States, fifteen million dollars ($15,000,000).  Such payment must be made within seven

days of entry of this Order by electronic fund transfer in accordance with instructions previously

provided by a representative of Plaintiff.

## X.    CONSUMER FUND

IT IS FURTHER ORDERED that:

A.    Judgment in the amount of five million dollars ($5,000,000) is entered in favor of
Plaintiff against Defendant, as equitable monetary relief.

B.    Defendant is ordered to pay to Plaintiff, by making payment to the Treasurer of the
United States, five million dollars ($5,000,000).  Such payment must be made within seven days
of entry of this Order by electronic fund transfer in accordance with instructions previously
provided by a representative of Plaintiff.

C.    All money paid pursuant to this Provision X may be deposited into a fund administered
by the Commission or its designee to be used for equitable relief, including consumer redress and
any attendant expenses for the administration of any redress fund.  If a representative of the
Commission decides that direct redress to consumers is wholly or partially impracticable or
money remains after redress is completed, the Commission may apply any remaining money for
such other equitable relief (including consumer information remedies) as it determines to be
reasonably related to Defendant's practices alleged in the Complaint.  Any money not used for
such equitable relief is to be deposited to the U.S. Treasury as additional civil penalties.
Defendant has no right to challenge any actions the Commission or its representatives may take
pursuant to this Provision X.

## XI.    ADDITIONAL MONETARY PROVISIONS

A.    Defendant relinquishes dominion and all legal and equitable right, title, and interest in all
assets transferred pursuant to this Order and may not seek the return of any assets.

B.      The facts alleged in the Complaint will be taken as true, without further proof, in any

subsequent civil litigation by or on behalf of the Commission, including in a proceeding to

enforce its rights to any payment or monetary judgment pursuant to this Order.

C.      Defendant acknowledges that its Taxpayer Identification Number, which Defendant

previously submitted to the Commission, may be used for collecting and reporting on any

delinquent amount arising out of this Order, in accordance with 31 U.S.C. § 7701.

## XII.    CUSTOMER INFORMATION

IT IS FURTHER ORDERED that Defendant, Defendant's officers, agents, employees,

and attorneys, and all other persons in active concert or participation with any of them, who

receive actual notice of this Order, whether acting directly or indirectly, in connection with

promoting or offering for sale any good or service are permanently restrained and enjoined from

directly or indirectly failing to provide sufficient customer information, as requested by the

Commission, to enable the Commission to efficiently administer consumer redress in accordance

with Provision X above.  If a representative of the Commission requests in writing any

information related to redress, Defendant must provide it, in the form prescribed by the

Commission, within 14 days.

## XIII.   ORDER ACKNOWLEDGMENTS

IT IS FURTHER ORDERED that Defendant obtains acknowledgments of receipt of this

Order:

A.      Defendant, within seven days of entry of this Order, must submit to the Commission an

acknowledgment of receipt of this Order sworn under penalty of perjury.

B.      For ten years after entry of this Order, Defendant must deliver a copy of this Order to:

14

(1) all principals, officers, directors, and LLC managers and members; (2) all employees having managerial responsibilities for conduct related to the subject matter of the Order and all agents and representatives who participate in conduct related to the subject matter of the Order; and (3) any business entity resulting from any change in structure as set forth in Provision XIV of this Order.  Delivery must occur within seven days of entry of this Order for current personnel.  For all others, delivery must occur before they assume their responsibilities.

C.      From each individual or entity to which Defendant delivered a copy of this Order, Defendant must obtain, within 30 days, a signed and dated acknowledgment of receipt of this Order.

## XIV.   COMPLIANCE REPORTING

IT IS FURTHER ORDERED that Defendant make timely submissions to the Commission:

A.      One year after entry of this Order, Defendant must submit a compliance report, sworn under penalty of perjury, in which Defendant must:  (a) identify the primary physical, postal, and email address and telephone number, as designated points of contact, which representatives of the Commission and Plaintiff may use to communicate with Defendant; (b) identify all of Defendant's businesses by all of their names, telephone numbers, and physical, postal, email, and Internet addresses; (c) describe the activities of each business, including the goods and services offered, and the means and method of sales; (d) describe in detail whether and how Defendant is in compliance with each provision of this Order; and (e) provide a copy of each Order Acknowledgment obtained pursuant to this Order, unless previously submitted to the Commission.

B.      For ten years after entry of this Order, Defendant must submit a compliance notice, sworn under penalty of perjury, within 14 days of any change in the following Defendant must report any change in: (a) any designated point of contact; or (b) the corporate structure of Defendant that may affect compliance obligations arising under this Order, including: creation, merger, sale, or dissolution of the entity or any subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order.

C.      Defendant must submit to the Commission notice of the filing of any bankruptcy petition, insolvency proceeding, or similar proceeding by or against Defendant within 14 days of its filing.

D.      Any submission to the Commission required by this Order to be sworn under penalty of perjury must be true and accurate and comply with 28 U.S.C. § 1746, such as by concluding:  "I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on:  _____" and supplying the date, signatory's full name, title (if applicable), and signature.

E.      Unless otherwise directed by a Commission representative in writing, all submissions to the Commission pursuant to this Order must be emailed to DEbrief@ftc.gov or sent by overnight courier (not the U.S. Postal Service) to Associate Director for Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue NW, Washington, DC  20580. The subject line must begin:  "In re Vivint Smart Home, Inc., FTC File No. 1923060."

## XV.    RECORDKEEPING

IT IS FURTHER ORDERED that Defendant must create certain records for ten years after entry of the Order, and retain each such record for five years.  Specifically, in connection with promoting or offering for sale any good or service, Defendant must create and retain the

16

following records:

A.      Accounting records showing the revenues from all goods or services sold;

B.      Personnel records showing, for each person providing services, whether, as an employee or otherwise, that person's name, addresses, telephone numbers, job title or position, dates of service, and (if applicable) the reason for termination;

C.      Records of all consumer complaints and refund requests, whether received directly or indirectly, such as through a third party, and any response;

D.      All employee training materials concerning the subject matter of the Order; and

E.      All records necessary to demonstrate full compliance with each provision of this Order, including all submissions to the Commission.

## XVI.   COMPLIANCE MONITORING

IT IS FURTHER ORDERED that, for the purpose of monitoring Defendant's compliance with this Order:

A.      Within 14 days of receipt of a written request from a representative of the Commission or Plaintiff, Defendant must:  submit additional compliance reports or other requested information, which must be sworn under penalty of perjury; appear for depositions; and produce documents for inspection and copying.  The Commission and Plaintiff are also authorized to obtain discovery, without further leave of court, using any of the procedures prescribed by Federal Rules of Civil Procedure 29, 30 (including telephonic depositions), 31, 33, 34, 36, 45, and 69.

B.      For matters concerning this Order, the Commission and Plaintiff are authorized to communicate directly with Defendant.  Defendant must permit representatives of the Commission and Plaintiff to interview any employee or other person affiliated with Defendant

who has agreed to such an interview.  The person interviewed may have counsel present.

C.      The Commission and Plaintiff may use all other lawful means, including posing, through its representatives, as consumers, suppliers, or other individuals or entities, to Defendant or any individual or entity affiliated with Defendant, without the necessity of identification or prior notice.  Nothing in this Order limits the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1.

## XVII.  RETENTION OF JURISDICTION

IT IS FURTHER ORDERED that this Court retains jurisdiction of this matter for purposes of construction, modification, and enforcement of this Order.

**SO ORDERED this  3rd  day of May, 2021.**

DALE A. KIMBALL
United States District Judge

**SO STIPULATED AND AGREED:**

**FOR PLAINTIFF:**

**FOR THE UNITED STATES OF AMERICA:**

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

MICHAEL D. GRANSTON
Deputy Assistant Attorney General

GUSTAV W. EYLER
Director
Consumer Protection Branch

LISA K. HSIAO
Assistant Director

*/s/ Alisha M. Crovetto*
ALISHA M. CROVETTO
Trial Attorney
Consumer Protection Branch
Civil Division
U.S. Department of Justice
450 5th Street, N.W.
Washington, DC 20530
(202) 305-7196
alisha.m.crovetto@usdoj.gov

**FOR THE FEDERAL TRADE COMMISSION:**

MANEESHA MITHAL
Associate Director
Division of Privacy and Identity Protection

ROBERT G. SCHOSHINSKI
Assistant Director
Division of Privacy and Identity Protection

Dated: April 14, 2021

GORANA NESKOVIC
Attorney
Division of Privacy and Identity Protection
Federal Trade Commission
600 Pennsylvania Ave, NW, Mail Stop CC-8232
Washington, DC 20580
(202) 326-2322; gneskovic@ftc.gov
(202) 326-3392 (fax)

KEVIN H. MORIARTY
Attorney
Division of Privacy and Identity Protection
Federal Trade Commission
600 Pennsylvania Ave, NW, Mail Stop CC-8232
Washington, DC 20580
(202) 326-2949; kmoriarty@ftc.gov
(202) 326-3392 (fax)

**FOR DEFENDANT VIVINT SMART HOME, INC.:**

Dated: March 4, 2021

NICHOLAS S. GOLDIN, ESQ.
JONATHAN K. YOUNGWOOD, ESQ.
DAVID ELBAUM, ESQ.
MICHAEL S. CARNEVALE, ESQ.
Simpson Thacher & Bartlett LLP
425 Lexington Avenue
New York, NY 10017
(212) 455-3685 (ngoldin@stblaw.com)
(212) 455-3539 (jyoungwood@stblaw.com)
(212) 455-2861 (david.elbaum@stblaw.com)
(212) 455-3403 (michael.carnevale@stblaw.com)
(212) 455-2502 (fax)

*Counsel for Defendant Vivint Smart Home, Inc.*

**DEFENDANT VIVINT SMART HOME, INC.:**

Dated: March 4, 2021

Todd R. Pedersen
Chief Executive Officer

21